IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOEL RAMON LATTANZIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 C 11868 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | Magistrate Judge Susan E. Cox |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Joel Ramon Lattanzio ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him Social Security disability benefits under Title II of the Social Security Act. Plaintiff seeks a judgment reversing the final decision or remanding it to a new Administrative Law Judge ("ALJ") for review. Defendant Carolyn W. Colvin, the Commissioner of Social Security ("Commissioner"), seeks a summary judgment affirming the final decision. For the reasons set forth below, Plaintiff's motion is granted [dkt 13] and the Commissioner's motion is denied [dkt 21].

## BACKGROUND

### I. Procedural History

On July 26, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, with an alleged onset date ("AOD") of January 20, 2011. R. 197–98. On October 2, 2013, the Social Security Administration ("SSA") denied his application. R. 114. On March 25, 2014, upon reconsideration, the SSA again denied his application. R. 124. On March 31, 2014, Plaintiff filed a formal written request for a hearing before an ALJ. R. 137–38. On March 9, 2015, ALJ Kimberly S. Cromer conducted a hearing on Mr. Lattanzio's claim

and took testimony from several witnesses. R. 51–105. Present and testifying were the Plaintiff, a Medical Examiner ("ME"), and a Vocational Examiner ("VE"). R. 19. Plaintiff was represented by counsel. R. 51. On March 23, 2015, ALJ Cromer held that Plaintiff was not disabled at any time from January 20, 2011 through the date last insured ("DLI"), December 31, 2014. On May 20, 2015, Plaintiff requested review of the ALJ's decision. R. 6–15. The Appeals Council ("AC") declined to accepted jurisdiction, making the ALJ's decision the final decision of the Commissioner. R. 1-5. Plaintiff now seeks review of the ALJ's decision.

## II. Medical Evidence

Plaintiff has not been employed since August 2009. R. 286. Since that time, he has suffered from a number of health crises, including: severe heart disease (subsequently resolved via surgical intervention); peripheral neuropathy; carpal tunnel syndrome; arthritis; gout; hypertension; and lower back pain. R. 21. Two recurring complaints are persistent, diffuse swelling of the feet and hands, and numbness and tingling of the fingers and feet.

The Plaintiff's original claim for disability, which he filed on July 26, 2013, was the result of a conversation with a Social Security employee who noted that his hands were swollen and that he had difficulty with his hands when signing the paperwork. R.84. In the initial paperwork from August 26, 2013, the Plaintiff stated that he had "constant numbness in hands + fingers" and "swollen hands" and that he could not "write or keyboard for long period of time." R.244.

On September 17, 2013, Dr. Roopa Karri performed a Consultative Exam ("CE"). Dr. Karri noted that the Plaintiff had complained that "his hands and feet feel numb and swollen all the time for the last 4 years." R.404. Dr. Karri also reported that the Plaintiff had been dropping things, had poor grip, and could not open jars or bottles. R.404. Upon examination, Dr. Karri

2

noted that the Plaintiff had "1+ edema in the hands and feet" and "diffusely puffy fingers." R.405. She also observed that the Plaintiff had "mild difficulty squeezing the blood pressure pump with either hand," and that that he could "button, zip and tie shoelaces," "make fists," and "oppose fingers." *Id.* Dr. Karri determined that the Plaintiff's "grip strength is 4+/5 in both hands." *Id.*

Shortly after Dr. Karri's CE, Dr. Ernst Bone wrote a Disability Determination Explanation, which was filed on October 1, 2013. R.106. In the Disability Determination, Dr. Bone reviewed Dr. Karri's CE and reported that based on the evidence from the CE, the Plaintiff's manipulative capacity was limited bilaterally for both handling and feeling, but was unlimited with regard to fingering. R.111. However, Dr. Bone also indicated that an additional CE was required because "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim. Additional evidence is required to establish current severity of the individual impairments." R.108.

On November 12, 2013, the Plaintiff's long-time treating physician, Dr. Behnke, referred him to Dr. Kahn of Northwest Neurology. R.427. At that time, Plaintiff reported a two- to three-year history of numbness and tingling in his feet and toes. R.427. Dr. Kahn reported that the Plaintiff had no sensation to pin in his fingers bilaterally, that he had "proximal weakness in his arms and legs," and that he had "distal sensory loss in his extremities, which is likely a peripheral neuropathy." *Id.* The Plaintiff was referred for further testing. *Id.*

On March 24, 2014, another Disability Determination was filed, this one by Dr. James Madison. R.115. In this Disability Determination, Dr. Madison reached the same conclusions regarding the Plaintiff's manipulative limitations that Dr. Bone had. R.121. Though more recent evidence had been submitted by the Plaintiff's treating physicians, Dr. Madison based his

conclusions regarding the Plaintiff's manipulative restrictions solely on Dr. Karri's September 2013 CE. *Id.* Unlike Dr. Bone, however, Dr. Madison concluded that no additional CE was required to establish the current severity of the impairments. R.118.

On November 18, 2014, Dr. Kahn noted that the Plaintiff had no sensation to vibration in his fingertips and that "[h]is hands are numb every day upon awakening. With use, he has sharp pains from the mid-forearms shooting into his fingers." R. 415. Subsequent testing revealed moderate to severe right carpal tunnel syndrome, moderate to severe left carpal tunnel syndrome, mild to moderate bilateral ulnar neuropathy at the elbow, and a "mildly active, moderate, length-dependent, sensorimotor, axonal peripheral neuropathy with sensory involvement of the upper extremities." *Id.* Although Dr. Kahn did not directly assess the Plaintiff's fingering limitations, her notes and the accompanying imaging studies provide the medical evidence to support Plaintiff's symptoms. Correspondence between the Plaintiff and the Social Security Administration suggest that there have been subsequent developments in his condition; however, these records fall outside of the time period in review. Notice of Appeals Council Action, 2.

### III.     Relevant Hearing Evidence

At the hearing, the ME testified that the Plaintiff's medically determinable impairments include "peripheral neuropathy, feet and finger," which were evinced by "a positive EMG in the record." R.63. The ME noted that the peripheral neuropathy was "milder in the upper extremities, apparently, but [Plaintiff] does complain—did complain of decreased grip at the time of the CE and elsewhere in the record." *Id.* The ME also noted findings of moderate carpal tunnel syndrome on the right and moderate to severe carpal tunnel syndrome on the left. *Id.*

With regard to exertional capacity, the ME opined that on the basis of the record, the Plaintiff would "be reduced to light" exertion because he did not "find sufficient severity in the record" to reduce him to sedentary, and the Plaintiff's "medication profile did not reflect treatment for the

peripheral neuropathy. . . or recommendation for surgery for the carpal tunnel syndrome." R.66. The ME noted that if the numbness of the Plaintiff's feet interfered with his ability to walk or stand comfortably, then that might further limit the Plaintiff's RFC. As a result, the ME initially limited the Plaintiff's exertional capacity to sedentary as of November 11, 2013, the date of the first notation in the record that reported "complaints [of numbness] regarding the hands and the feet." R.67–68. The ME later agreed to reduce the Plaintiff to a sedentary RFC as of the September 17, 2013 consultative exam, which noted edema of the Plaintiff's hands and feet. R.75–76.

## IV. The ALJ'S Decision

On May 23, 2015, the ALJ issued a written determination denying Plaintiff's DIB application. As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. R. 21. At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of January 20, 2011, through his date last insured. *Id*. At Step Two, the ALJ found that Plaintiff had severe impairments of peripheral neuropathy of the feet and bilateral hands; carpal tunnel syndrome; cervical spine neuroforaminal stenosis; arthritis; gout; hypertension with cardiac end organ damage; coronary artery disease status post angioplasty and stenting; obesity; and a vertebrogenic impairment with back pain. *Id*. At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. *Id.* Before Step Four, the ALJ found that Plaintiff had the residual function capacity ("RFC") to perform sedentary work. The ALJ also found that Plaintiff's RFC was further limited to lifting up to 10 pounds occasionally and less than 10 pounds frequently and standing and/or walking up to two hours in an eight hour workday with no sitting limitations. R. 23. Plaintiff is limited to frequent bilateral handling and fingering; can perform no work at unprotected heights or around work

hazards; is limited to the occasional operation of foot controls; must avoid concentrated exposure to vibration; can never climb ladders, ropes, or scaffolds and occasionally climb ramps or stairs; can occasionally balance, stoop, crouch, kneel, or crawl; and must avoid loud noise working environments. *Id.* At Step Four, the ALJ concluded that through the date last insured, Plaintiff was capable of performing his previous relevant work as a loan officer and that this work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. R. 31. Because of this determination, the ALJ did not proceed to Step Five and found that Plaintiff was not disabled under the Act. R. 32.

## STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is evidence "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). An ALJ "must minimally articulate her reasons for crediting or discrediting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The court conducts a "critical review of the evidence" and will not uphold the ALJ's decision when "it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336

F.3d 535, 539 (7th Cir. 2003) quoting *Clifford*, 227 F.3d at 869. However, the court may not "displace the ALJ's judgment by reconsidering facts or evidence or make independent determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

### I. ALJ Impermissibly "Played Doctor"

The ALJ has a duty to develop the record before making a determination that the claimant is not disabled. 20 C.F.R. § 404.1545(a)(3). When, "despite efforts to obtain additional evidence, the evidence is insufficient to determine" whether a claimant is disabled, the ALJ will attempt to "resolve the... insufficiency" by seeking additional evidence. 20 C.F.R. § 404.1520b. The federal regulations permit, but do not require, an ALJ to order a consultative examination when "the medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007); *see* 20 C.F.R. §§ 416.912(f), 416.917. In general, we give deference to "an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish that goal." *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011). If the ALJ determines that the despite efforts to obtain additional evidence, the evidence is insufficient to determine whether the claimant is disabled, she is authorized to make a determination or decision on the available evidence. 20 C.F.R. § 404.1520b(d). However, in such circumstances, the ALJ must still provide an accurate and logical bridge between the evidence and the conclusion such that a reviewing court is able to assess the validity of the ALJ's determination and afford the claimant meaningful judicial review. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). For this reason, this Circuit has held that "a consultative examination is normally required if the evidence is ambiguous, if specialized medical evidence is required but missing from the record, or if there

7

is a change in a condition but the current severity of the impairment is not established." Poyck, 414 F. App'x at 861; 20 C.F.R. § 416.919a(b).

In her decision, the ALJ noted that "new probative evidence has been received since the state agency medical consultants formulated their opinions, and which they consequently never had the opportunity to review and evaluate." R. 31. This evidence likely included Dr. Kahn's records from November 2014 analyzing new testing that showed moderate to severe right carpal tunnel syndrome, moderate to severe left carpal tunnel syndrome, mild to moderate bilateral ulnar neuropathy at the elbow, and a "mildly active, moderate, length-dependent, sensorimotor, axonal peripheral neuropathy with sensory involvement of the upper extremities." R. 415. However, the ALJ did not request a new consultative exam to determine the relevance of the evidence or its impact, if any, on the claimant's RFC. Instead, she decided, on the basis of the new evidence, that "a further narrowing of the claimant's residual functional capacity [was] warranted." *Id.* The ALJ deviated from the recommendation of the ME and, "giving the claimant the benefit of the doubt," found that the Plaintiff was limited to a sedentary RFC since his AOD. *Id.* The Court is left in the dark in attempting to determine how the ALJ applied this new medical evidence to reach her conclusion regarding the RFC; it does not appear to supported by the ME or any of the state agency consulting physicians. By basing her decision on the "benefit of the doubt" rather than on medical evidence, the ALJ did not build the necessary logical bridge between her RFC finding and the medical evidence. This constitutes reversible error because the ALJ's "failure to submit new and potentially decisive medical evidence to medical scrutiny. . . allows the ALJ to impermissibly play doctor, which the Seventh Circuit has emphasized is a "clear no-no." *Owens v. Colvin*, No. 1:15-cv-01751-JMS-MPB, 2016 U.S. Dist. LEXIS 71834, at *11 (S.D. Ind. June 2, 2016), *citing Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).

Additionally, the ALJ did not reconsider the claimant's manipulative restrictions in light of the new evidence, and did not explain why the "new probative evidence" mandated a narrowing of the claimant's exertional capacity, but did not affect his manipulative restrictions. This logical leap is particularly concerning because the "new probative evidence" in question includes EMG studies and physician's notes documenting that the claimant has been diagnosed with "moderate to severe" carpal tunnel syndrome and experiences numbness and tingling of the hands and feet. If the medical evidence was sufficient to warrant narrowing the Plaintiff's exertional capacity, the ALJ was required to explain why it did not also mandate a further narrowing the Plaintiff's manipulative limitations. The ALJ's failure to do so is the type of cherry-picking of medical evidence that the Seventh Circuit has held is impermissible. *See Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). As such, the ALJ's opinion must be reversed on this issue as well, and remanded to determine how the new evidence affects the Plaintiff's manipulative restrictions.

## CONCLUSION

The Court finds that in light of the ALJ's failure to submit new probative evidence to medical scrutiny and her decision to substitute her own judgment for that of a medical expert in formulating the Plaintiff's RFC, her determination that Plaintiff is not disabled is not supported by substantial evidence. As such, Plaintiff's motion is granted [dkt 13] and the Commissioner's motion is denied [dkt 21].

**Date: 1/19/2017**

_____
**U.S. Magistrate Judge, Susan E. Cox**